1

2                                              **E-Filed 7/5/05**

3

4

5

6

7                              NOT FOR CITATION

8               **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                          **SAN JOSE DIVISION**

11

| | |
|---|---|
| 12  DANIEL SPRINGER, | Case Number C-05-25-JF |
| 13              Plaintiff, | |
| 14        v. | |
| 15  ERNST & YOUNG, LLP, et al., | |
| 16              Defendants. | |
| 17 _____ | Case Number C-05-26-JF |
| 18  RICHARD GOEBEL, | |
| 19              Plaintiff, | |
| 20        v. | |
| 21  ERNST & YOUNG, LLP, et al., | |
| 22              Defendants. | |
| 23 | ORDER GRANTING PLAINTIFFS' MOTIONS TO REMAND |
| 24 | |
| 25 | |

26          Before the Court are motions to remand brought by the plaintiffs in two related actions,

27  *Daniel Springer v. Ernst & Young, LLP*, Case No. C-05-25-JF, and *Richard Goebel v. Ernst &*

28  *Young, LLP*, Case No. C-05-26-JF.  The Court has considered the briefing of the parties as well

1  as the oral arguments presented at the hearing on April 29, 2005.  For the reasons discussed

2  below, the motions will be granted.

3  **I. BACKGROUND**

4      The instant actions arise out of Plaintiffs' separation from employment with NextCard,

5  Inc. ("NextCard").  NextCard was an Internet-based provider of consumer credit that offered an

6  online credit approval system for a Visa card through its wholly-owned subsidiary, NextBank.

7  Plaintiffs Daniel Springer ("Springer") and Richard Goebel ("Goebel") were employed by

8  NextCard at its headquarters in San Francisco.

9      Separation From Employment:

10      Springer alleges that he decided to leave NextCard in June 2000 but that he agreed to stay

11  until a smooth transition of duties could be achieved.  He further alleges that he entered into a

12  separation agreement effective September 1, 2000, which provided among other things that:   (1)

13  he would be paid $25,000; (2) his unvested stock options for approximately 150,000 shares

14  would vest eighteen months after the effective date of the separation agreement; (3) he would not

15  to sell his existing NextCard shares until one year after the effective date of the separation

16  agreement or until the stock reached at least $20 per share; and (4) he would release any

17  employment-related claims he might have against NextCard and its officers, directors,

18  employees, attorneys, subsidiaries, affiliated companies and successors in interest.

19      Goebel alleges that in March 2001 he was informed that his position with NextCard was

20  being eliminated.  He was offered a choice between accepting a demotion or terminating his

21  employment with a separation agreement.  He entered into the separation agreement, which

22  provided among other things that:  (1) he would receive three months salary as severance pay and

23  limited continued medical coverage; (2) he would receive stock options for approximately 35,000

24  shares, exercisable one year after execution of the separation agreement; and (3) he would release

25  any employment-related claims he might have against NextCard and its directors, employees and

26  agents.

27      NextCard's Delaware Bankruptcy Action:

28      On October 31, 2001, NextCard announced that NextBank was substantially increasing

2

loan loss allowances, tightening underwriting criteria by limiting new account originations to FICO scores above 680, suspending other lending activities, reclassifying previously recognized fraud losses as credit losses and increasing risk weighted assets by more than $500 million. NextCard's stock declined 84% to less than a dollar a share on this news.  On February 7, 2002, the Office of the Comptroller of the Currency ("OCC") closed NextBank and appointed the FDIC as receiver.  NextCard filed a Chapter 11 bankruptcy action in the United States Bankruptcy Court for the District of Delaware ("Delaware Bankruptcy Court") on November 14, 2002.  The case was converted to a Chapter 7 case and remains pending in the Delaware Bankruptcy Court.

Proofs Of Claim In Delaware Bankruptcy Action:

Springer and Goebel filed proofs of claim in the NextCard bankruptcy action on March 26, 2003 and March 27, 2003, respectively, alleging claims for fraud, breach of fiduciary duty and breach of contract against individual NextCard officers and directors.  Each also served a notice upon NextCard purporting to rescind their separation agreements; unless rescinded, those agreements bar the assertion of claims against NextCard's officers and directors.

San Francisco Action:

On October 30, 2003, Springer and Goebels filed separate complaints in the San Francisco Superior Court, asserting fraud and related claims against individual NextCard officers and directors and seeking rescission of their separation agreements.  NextCard was not named as a defendant in these actions because of the bankruptcy stay.  The defendant officers and directors removed the actions to the United States Bankruptcy Court for the Northern District of California, San Francisco Division ("San Francisco Bankruptcy Court"), asserting that the actions involved core bankruptcy proceedings or at least were "related to" the Delaware bankruptcy.  The defendant officers and directors then moved to dismiss the actions, asserting that NextCard was an indispensable party because it was a party to the separation agreements, but that NextCard could not be joined in light of the automatic bankruptcy stay.  The defendant officers and directors also asserted that Plaintiffs had failed to plead fraud with sufficient particularity.  Springer and Goebels both moved for remand to the San Francisco Superior Court. They did not challenge the San Francisco Bankruptcy Court's jurisdiction, but requested remand

3

1    on equitable grounds pursuant to 28 U.S.C. § 1452.

2           The San Francisco Bankruptcy Court dismissed the actions against NextCard's officers

3    and directors for failure to join NextCard as an indispensable party, but left open the question of

4    whether leave to amend to add NextCard would be granted if Springer and Goebels could obtain

5    relief from the bankruptcy stay.  The court denied the motion to dismiss for failure to plead fraud

6    with sufficient particularity.  Finally, the court denied the motion for remand without prejudice.

7    Springer and Goebels then unsuccessfully sought relief from stay in the Delaware Bankruptcy

8    Court.

9           Complaints In Delaware Bankruptcy Court:

10          On November 1, 2004, Springer and Goebels filed separate complaints in the Delaware

11   Bankruptcy Court against the same officers and directors they had sued in the San Francisco

12   Action.  Plaintiffs also named NextCard as a defendant with respect to claims for rescission of

13   their separation agreements.[1]  Those actions remain pending.

14          Instant Actions Against Ernst & Young And Its Employees:

15          Springer and Goebels then filed separate complaints in the San Francisco Superior Court

16   against NextCard's outside auditor, Ernst & Young, LLP, and three of its individual employees

17   (collectively "E&Y"), asserting fraud and related claims based upon E&Y's alleged accounting

18   improprieties.  E&Y removed the complaints to this Court on January 3, 2005 pursuant to 28

19   U.S.C. § 1452(a), based upon its assertion that the actions are "related to" NextCard's

20   bankruptcy.  Springer and Goebels seek remand to the San Francisco Superior Court.

21                                    **II. DISCUSSION**

22   **(A)    Appropriate Court To Decide Plaintiffs' Remand Motions**

23          Plaintiffs assert that their state court actions properly should have been removed to the

24   bankruptcy court rather than the district court and request that this Court refer their remand

25   motions to the San Francisco Bankruptcy Court for disposition.  This Court's Bankruptcy Local

26

27          ───────────────────

28          [1] The automatic stay does not preclude the filing of a complaint against a debtor in the
     court where the debtor filed bankruptcy.

                                            4

1  Rules contain a general reference to the bankruptcy court for all civil proceedings arising under

2  Title 11 or arising in or related to a case under Title 11. Bank. L. R. 5011-1(a). Because E&Y

3  removed the actions on the basis of "related to" jurisdiction, it appears that the matter should

4  have been referred to the bankruptcy court at the time of removal.  However, that did not occur,

5  and this Court has expended significant time and effort in familiarizing itself with the

6  complicated procedural background of the cases, reviewing the parties' contentions and the

7  applicable law, and conducting a hearing.  Under these circumstances, considerations of

8  timeliness and judicial economy lead the Court to conclude that it should decide the pending

9  remand motions rather than transferring the actions to the bankruptcy court.  Even if the Court

10  had referred the actions to the bankruptcy court, such referral could have been withdrawn at the

11  Court's discretion.  28 U.S.C. § 157(d); Bank. L. R. 5011-2.  At the hearing, Plaintiffs' counsel

12  conceded that this Court has jurisdiction to decide the remand motions.  The Court therefore will

13  proceed to consideration of the remand motions.[2]

14  **(B)    Motions For Remand**

15          Plaintiffs argue that the actions must be remanded because this Court lacks subject matter

16  jurisdiction.  Alternatively, Plaintiffs argue that if subject matter jurisdiction exists, the actions

17  should be remanded on equitable grounds.

18          **1.      Subject Matter Jurisdiction**

19          E&Y removed the instant actions pursuant to 28 U.S.C. § 1452(a), permitting removal of

20  claims over which the district court has jurisdiction under 28 U.S.C. § 1334.  Section 1334(b)

21  confers upon district courts original but not exclusive jurisdiction over "all civil proceedings

22  arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).

23  Proceedings "arising under" Title 11 are those proceedings involving a cause of action created or

24  determined by a statutory provision of Title 11.  *In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th

25

26          [2] The Court notes that Plaintiffs have demanded a jury trial and do not consent to a jury

27  trial in the bankruptcy court.  Consequently, even if this Court were to transfer the actions to the
    bankruptcy court for disposition of the remand motions and those motions were denied, the

28  actions would be transferred back to this court to be litigated.

5

1   Cir. 1995). Proceedings "arising in" Title 11 cases are those administrative matters arising only

2   in bankruptcy cases. *Id*. Proceedings "related to" Title 11 cases are those proceedings that

3   conceivably could have any effect on an estate being administered in bankruptcy. *In re Fietz*,

4   852 F.2d 455, 457 (9th Cir. 1988).

5        In its papers, E&Y asserts that Plaintiffs' actions against it are "related to" the NextCard

6   bankruptcy for the following reasons: (1) E&Y will assert an equitable contribution claim

7   against NextCard in the event E&Y is found liable to Plaintiffs; (2) a state court action might

8   impose discovery burdens on the debtor, NextCard; and (3) judgment for Plaintiffs in these

9   actions might have a collateral estoppel effect against the debtor, NextCard. At the hearing,

10  E&Y abandoned the latter two reasons and made clear that it is asserting "related to" jurisdiction

11  based upon E&Y's potential equitable contribution claim against NextCard. In any event, the

12  Court concludes that these reasons would not suffice to establish "related to" jurisdiction. The

13  Court has not discovered any authority for the proposition that a state court action becomes

14  "related to" a bankruptcy simply because some discovery might be required of the debtor.

15  Moreover, judgment for Plaintiffs in the instant actions against E&Y could not have a collateral

16  estoppel effect upon NextCard because NextCard is not a party to the instant actions. Subject

17  matter jurisdiction thus depends solely upon E&Y's contention that it will assert an equitable

18  contribution claim against NextCard in the event E&Y is found liable to Plaintiffs in the instant

19  actions.

20       Whether E&Y's potential future equitable contribution claim against NextCard creates a

21  sufficient nexus between the instant actions and the NextCard bankruptcy to create "related to"

22  jurisdiction presents a difficult question. In *Fietz v. Great Western Savings*, 852 F.2d 455 (9th

23  Cir. 1988), the Ninth Circuit adopted the test set forth by the Third Circuit in *Pacor, Inc. v.*

24  *Higgins*, 743 F.2d 984 (3d Cir. 1984), *overruled on other grounds by Things Remembered, Inc.*

25  *v. Petrarca*, 516 U.S. 124 (1995). In *Pacor*, John and Louise Higgins brought a state court action

26  against Pacor for damages arising from John Higgins' exposure to asbestos supplied by Pacor.

27  Pacor filed a third party complaint against Manville, the original manufacturer of the asbestos.

28  Manville subsequently filed for bankruptcy and Pacor's third party action against Manville was

6

1    severed from the main action.  A dispute thereafter arose as to whether the Higgins-Pacor action

2    was "related to" the Manville bankruptcy such that the entire controversy could be removed to

3    bankruptcy court.  The Third Circuit concluded that "related to" jurisdiction did not exist.

4         The Third Circuit noted that in enacting 28 U.S.C. § 1471(b), the statutory predecessor to

5    § 1334(b), "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so

6    that they might deal efficiently and expeditiously with all matters connected with the bankruptcy

7    estate." *Pacor*, 743 F.2d at 994.  However, the court noted that the reach of the statute was not

8    unlimited, and that for subject matter jurisdiction to exist there must be a practical nexus between

9    the civil action and the bankruptcy.  *Id*.  The court stated the test for determining whether such a

10   nexus exists as follows:

11        The usual articulation of the test for determining whether a civil proceeding is
          related to bankruptcy is whether *the outcome of the proceeding could conceivably*
12        *have any effect on the estate being administered in bankruptcy.*  [citations
          omitted].  Thus, the proceeding need not necessarily be against the debtor or
13        against the debtor's property.  An action is related to bankruptcy if the outcome
          could alter the debtor's rights, liabilities, options, or freedom of action (either
14        positively or negatively) and which in any way impacts upon the handling and
          administration of the bankrupt estate.
15

16   *Id*.

17        Applying this test to the facts of the case before it, the Third Circuit concluded that "at

18   best" the Higgins' action against Pacor was "a mere precursor to the potential third party claim

19   for indemnification by Pacor against Manville."  *Id*. at 995.  The court stated that the outcome of

20   the Higgins-Pacor action could not determine any rights, liabilities or course of action of the

21   bankruptcy debtor, Manville.  *Id*.  The court further stated that because Manville was not a party

22   to the Higgins-Pacor action, it could not be bound by *res judicata* or collateral estoppel.  *Id*.  The

23   court found that the bankruptcy estate therefore "could not be affected in any way until the Pacor-

24   Manville third party action is actually brought and tried."  *Id*.  The court distinguished the case

25   before it from those cases in which a written indemnity agreement made liability of the debtor on

26   a subsequent claim for indemnity or contribution virtually certain, or "automatic."  *Id*.

27        In *Fietz*, the Ninth Circuit explicitly adopted the *Pacor* test, characterizing it as the

28   broadest articulation of "related to" jurisdiction among the circuits.  *Fietz*, 852 F.2d at 457.  The

                                                    7

1    Ninth Circuit rejected formulations adopted by other circuits under which jurisdiction would not

2    exist "where the civil action is 'conceivably' related to the bankruptcy estate, but that

3    relationship is remote." *Id*.  In embracing the formulation articulated by *Pacor*, the court stated

4    that "[w]e reject any limitation on this definition; to the extent that other circuits may limit

5    jurisdiction where the *Pacor* decision would not, we stand by *Pacor*." *Id*.

6         The Bankruptcy Appellate Panel ("BAP") has applied the *Pacor* test to find a lack of

7    "related to" jurisdiction on facts similar to those in the instant actions.  In *In re ACI-HDT Supply*

8    *Co.*, 205 B.R. 231 (9th Cir. BAP 1997), the plaintiff investors alleged that they were defrauded

9    of more than $60 million in a "Ponzi" scheme marketed by a corporation, its officers and other

10   corporate partners.  After the corporation filed for bankruptcy, the plaintiffs sued a number of the

11   officers and corporate partners in state court.  One of the defendants removed the action to the

12   bankruptcy court, asserting that it was a core bankruptcy proceeding or that it was at least

13   "related to" the bankruptcy.  Although the theory underlying the assertion of "related to"

14   jurisdiction was not clearly articulated in the decision, the theory apparently was that the state

15   court defendants and debtor corporation were joint tortfeasors in the Ponzi scheme.  The BAP

16   concluded that there was no "related to" jurisdiction because there was no evidence that the state

17   court action would have any effect upon the bankruptcy estate, the debtor was not named as a

18   party in the state court action, and the state court action did not usurp any claims that the

19   bankruptcy trustee would have.  *Id*. at 237-38.  The same is true with respect to the actions

20   currently before this Court.  While E&Y and NextCard are alleged to be joint tortfeasors with

21   respect to the alleged fraud against Plaintiffs, the instant actions cannot have any direct effect on

22   the bankruptcy.  In the words of the *Pacor* court, the instant actions are at most "precursors" to

23   eventual third-party claims that E&Y might assert against NextCard in the event E&Y is found

24   liable here.

25         If these were the only authorities on point, this Court would have little difficulty in

26   concluding that "related to" jurisdiction does not exist.  However, E&Y points out that the Third

27   Circuit appears to have drawn back from certain limitations on "related to" jurisdiction

28   articulated in *Pacor*.  In *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261 (3rd Cir. 1991), the

1   court held that "[a] key word in [the *Pacor* test] is 'conceivable.'  Certainty, or even likelihood,

2   is not a requirement."  *Id*. at 264-65.  This language undercuts the language in *Pacor* indicating

3   that there must be some certainty that a successful contribution or indemnification claim would

4   be brought against the debtor.

5        E&Y also relies heavily upon a Sixth Circuit case, *In re Dow Corning Corp.*, 86 F.3d 482

6   (6th Cir. 1996), in which the court expressly rejected an "automatic" liability requirement.  Until

7   the early nineties, Dow Corning was the predominant producer of silicone gel breast implants

8   and also supplied raw materials to other manufacturers.  Amidst lawsuits by thousands of implant

9   recipients against Dow Corning and others, Dow Corning filed for bankruptcy.  A question arose

10  whether suits against the nondebtor suppliers and manufacturers were "related to" the Dow

11  Corning bankruptcy.  The Sixth Circuit found that because the suits against the nondebtors

12  *potentially* could give rise to claims for contribution or indemnification against Dow Corning, the

13  suits against the nondebtors were "related to" the bankruptcy.  *Id*. at 494.  The court

14  distinguished the facts before it from those in the *Pacor* action, stating that "[w]e believe there is

15  a qualitative difference between the single suit involved in *Pacor* and the overwhelming number

16  of cases asserted against Dow Corning and the nondebtor defendants in this case.  A single

17  possible claim for indemnification or contribution simply does not represent the same kind of

18  threat to a debtor's reorganization plan as that posed by the thousands of potential

19  indemnification claims at issue here."  *Id*.  However, this distinction is presented as an *additional*

20  reason for declining to apply the "automatic" liability rationale set forth in *Pacor*; *Dow Corning*

21  appears to squarely reject *any* requirement of certainty that the bankruptcy estate will be affected,

22  and to hold that the *possibility* of a future contribution or indemnification claim against the

23  debtor is sufficient to confer "related to" jurisdiction over a civil action between nondebtors.

24       Finally, E&Y cites a number of district court decisions holding that an action between

25  nondebtors is "related to" a bankruptcy if there is a potential that the action might at some point

26  result in contribution or indemnification claims against the bankruptcy debtor.  *See, e.g., Pacific*

27  *Life Ins. Co. v. J.P. Morgan Chase & Co.*, 2003 WL 22025158, at *1 (C.D. Cal. 2003) (finding

28  "related to" jurisdiction on the basis of written indemnification agreements between defendants

9

1    and debtor, but stating broadly that "[c]ontingent claims of contribution and indemnification such

2    as those raised by Defendants may be sufficient to invoke 'related to' jurisdiction, *even if*

3    *Defendants are not guaranteed indemnification*") (emphasis added); *In re Sizzler Restaurants*

4    *Int'l, Inc.*, 262 B.R. 811, 819 n.5 (C.D. Cal. 2001) (holding that "[t]his court declines to accept a

5    reading of *Pacor* which requires an unconditional indemnification agreement or otherwise

6    automatic liability on the part of the debtor in order to find the existence of related to

7    jurisdiction").

8         The Court is left with the impression that the standard originally articulated in *Pacor* has

9    evolved in a manner suggesting that the Third Circuit, if it were confronted with the facts of

10   *Pacor* today, might conclude that "related to" jurisdiction existed after all.  This impression is

11   troubling in light of the Ninth Circuit's characterization of *Pacor* as the most expansive

12   articulation of "related to" jurisdiction and refusal to adopt more limited approaches of other

13   circuits, including the Sixth Circuit, which now has rejected *Pacor*'s "automatic" liability

14   language as inappropriately narrow.

15        This Court thus is left with something of a dilemma.  The Ninth Circuit clearly and

16   unambiguously adopted *Pacor* in *Fietz*.  Applying *Pacor* to the facts before this Court, it would

17   be impossible to find the existence of "related to" jurisdiction.  However, E&Y makes an

18   appealing argument that strict application of *Pacor* would be contrary to current trends and that if

19   confronted with the issue today the Ninth Circuit would adopt the broader test for "related to"

20   jurisdiction articulated in the recent cases discussed above.  While E&Y may be correct as to

21   what the Ninth Circuit would do if confronted with the issue today, this Court is bound by what

22   the Ninth Circuit did when confronted with the issue in 1988, which was to adopt *Pacor*

23   explicitly and without reservation.  Applying that case here, the Court is constrained to grant

24   Plaintiffs' motions to remand.

25        **2.    Equitable Considerations For Remand**

26        Because the Court concludes that it lacks "related to" jurisdiction, it need not address

27   Plaintiffs' alternative request that the Court exercise its discretion to remand the actions under 28

28   U.S.C. 1452.  Were the Court to conclude that it has subject matter jurisdiction, it likely would

1   not remand the actions on equitable grounds.  In light of the Court's familiarity with the

2   NextCard securities fraud action and a number of related actions,[3] judicial efficiency and

3   economy would have argued strongly for keeping the case here.  However, such considerations

4   cannot confer subject matter jurisdiction where none otherwise exists.

5                                    **III. ORDER**

6          Plaintiffs' motions for remand are GRANTED.

11  DATED:  July 5, 2005

12                                          /s/ electronic signature authorized

13                                          _____
                                            JEREMY FOGEL
14                                          United States District Judge

27

28         [3] The earlier assignment of the securities fraud action and related cases to this Court was
    the basis of the transfer of the instant cases to this Court as additional related cases.

Case No. C-05-25-JF / C-05-26-JF
ORDER GRANTING PLAINTIFFS' MOTIONS TO REMAND
(JFLC2)

1   This Order was served on the following persons:

2

3   Lawrence Ball attorneys@highman-ball.com,

4   Thomas David Blanford tdb@rjop.com, rjf@rjop.com

5

6   Elissa Jill Germaine , Esq elissa.germaine@LW.com, Linda.tam@lw.com

7   Bruce J. Highman attorneys@highman-ball.com

8   James K. Lynch jim.lynch@lw.com,

9   Timothy L. O'Mara tim.omara@lw.com,

10

11  Edward W. Swanson eswanson@swansonmcnamara.com

12  Peter Alan Wald peter.wald@lw.com,

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C-05-25-JF / C-05-26-JF
ORDER GRANTING PLAINTIFFS' MOTIONS TO REMAND
(JFLC2)